UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

SE PROPERTY HOLDINGS, LLC

CIVIL ACTION

VERSUS

NO. 12-231-JJB

UNIFIED RECOVERY GROUP, LLC, ET AL.

### RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment (Doc. 46) by the Plaintiff, SE Property Holdings, LLC ("SEPH").  The Motion is opposed (Doc. 52) by all Defendants: United Recovery Group, LLC ("URG"), IED, LLC ("IED"), International Equipment Distributors, Inc. ("International Equipment"), Green and Sons II, LLC, Catahoula Trading Company, LLC ("CTC"), Memory C. Green, Cecile G. Green, Jeff S. Green, and J.S. Lawrence Green.  SEPH has filed a reply (Doc. 53).  The Court has jurisdiction pursuant Title 28 of the United States Code, Section 1332.  Oral argument is not necessary.

I.

SEPH is the successor in interest by merger to the rights of Vision Bank, a Florida corporation, which extended loans to URG, IED, and International Equipment, and in whose favor guaranties and additional security interests were granted.  From January 2007, through October 2011, Vision made six loans to IED, International Equipment, and URG that are at issue.  IED signed a promissory note for $7,600,000.00, of which it now owes $188,632.01 in principal, and $20,988.14 in interest as of November 5, 2012, with interest thereafter accruing at a rate of 18.00% until paid, plus late charges, attorneys' fees, and other collection costs.  International Equipment signed a promissory note for $4,500,000.00 ("International Equipment Note

1

1"), of which it now owes $4,491,331.99 in principal, and $567,093.14 in interest as of November 5, 2012, with interest thereafter accruing at a rate of 18.00% until paid, plus late charges, attorneys' fees, and other collection costs.  International Equipment signed a promissory note for $200,000 ("International Equipment Note 2"), of which it now owes $16,666.85 in principal, and $1,027.34 in interest as of November 5, 2012, with interest thereafter accruing at the rate of 8.00% until paid, plus late charges, attorneys' fees, and other collection costs.  URG signed a promissory note for $12,250,000.00 ("URG Note 1"), of which it now owes $12,250,000.00 in principal, and $1,352,582.63 in interest as of November 5, 2012, with interest thereafter accruing at the rate of 18.00% until paid, plus late charges, attorneys' fees, and other collection costs.  URG signed a promissory note for $4,000,000.00 ("URG Note 2"), of which it now owes $3,999,291.47 in principal, and $504,966.20 in interest as of November 5, 2012, with interest thereafter accruing at the rate of 18.00% until paid, plus late charges, attorneys' fees, and other collection costs.  URG signed a promissory note for $2,681,000.00 ("URG Note 3"), of which it now owes $2,680,999.99 in principal, and $338,059.74 in interest as of November 5, 2012, with interest thereafter accruing at a rate of 18.00% until paid, plus late charges, attorneys' fees, and other collection costs.  The total amount of principal and interest due on the six loans as of November 5, 2012 is $26,411,639.50.  The Defendants admit the notes have matured and that the loans have not been paid in full.

Each note was guaranteed, through the signing of guaranty agreements, by more than one of the Defendants.  All Defendants signed guaranty agreements except CTC and Green and Sons.  URG, IED, and International Equipment each individually executed security agreements with Vision granting Vision security interests in certain

collateral.  The International Equipment Security Agreement, dated July 11, 2010, granted Vision a security interest in "any property of mine, whether I own it now or in the future, which is in your possession," and "UCC ON ALL BUSINESS ASSETS, A/R FILED AT DOCUMENT NO. 05-0137837."  Doc. 47-4, at 84.  UCC financing statements were filed and recorded in order to perfect the security interests.

CTC, J.S. Lawrence Green and Memory Green, and Jeff S. Green and Cecile G. Green also executed mortgages relevant to securing of the indebtedness at issue.  The Multiple Indebtedness Mortgage made by J.S. Lawrence Green and Memory C. Green, collectively as mortgagor, dated October 18, 2011 and recorded with the Clerk of Court and Recorder or Mortgages of East Baton Rouge Parish, Louisiana on October 19, 2011 at Original 725, Bundle 12362, secures all present and future indebtedness of URG, IED, and International Equipment to SEPH.  The Multiple Indebtedness Mortgage made by Jeff S. Green and Cecile G. Green, collectively as mortgagor, dated October 18, 2011 and recorded with the Clerk of Court of Washington parish, Louisiana on October 25, 2011 as File Number 2011-004949 at Book 933, Page 33, secures all present and future indebtedness of URG, IED, and International Equipment to SEPH.

IED granted a Pledge and Security Agreement in favor of Vision on August 29, 2008, pledging as collateral security, among other things,

> a continuing interest and lien on all of its right, title and interest in and to all of . . . (1) [IED]'s current and future ownership interests in JKS-URG Management Co., L.L.C., a Louisiana limited liability company (the "Company") together with any certificates now or hereafter issued representing or evidencing such interests, including without limitation the interests currently evidenced by that certain Membership Certificate described in Schedule I attached hereto (collectively, the "Membership Certificate"), evidencing a one-third (1/3) membership interest in the Company (collectively, the "LLC Interests"); (2) all other and additional interests in the Company hereafter acquired by [IED] in any manner,

3

including, without limitation, as distributions or otherwise, or shares, limited liability company interests, partnership or limited partnership interests, or other interests or rights or properties received as a result of any merger, consolidation, exchange, or similar transaction involving the Company, and all certificates representing all such shares; (3) all cash, property, liquidation and other dividends now or hereafter declared on the LLC Interests, and all redemption payments and all other monies due or to become due thereunder; (4) all securities entitlements, warrants, options, preemptive rights, rights of first refusal and other rights to subscribe to, purchase or receive any limited liability ownership interest, shares of common stock or other securities now or hereafter incident or existing or declared or granted in connection with such LLC Interests or otherwise; (5) all distributions (whether made in cash, money, instruments, income or other property) received or receivable or otherwise made in connection with the LLC Interests or incident thereto; and (6) all proceeds of all or any of the foregoing, in whatever form, including without limitation, all "proceeds" as such term is defined in Chapter 9 of the Louisiana Commercial Laws, La. R.S. 10:9-101, et seq. (hereafter the "UCC"), of any of the foregoing, and all proceeds of such proceeds (the items referred to in clauses (1) through (6) being collectively called the "Collateral").

Doc. 48, at 97–98.

Two life insurance policies were also assigned, transferred and set over to Vision as collateral on October 18, 2011. They are American General Policy No. MMM0288849, with J.S. Lawrence Green as policyowner and insured, and TIAACref Policy No. 0604095, with Jeff S. Green as policyowner and insured. Doc. 48, at 118–19, 121–22.

All parties signed a CROSS-DEFAULT, CROSS-COLLATERALIZATION AND MODIFICATION AGREEMENT ("the CD Agreement") involving the loans. The CD Agreement provides in pertinent part:

This Cross-Default, Cross-Collateralization and Modification Agreement (this "Agreement") is made as of the 18th day of October 2011 by and among Vision Bank ("Lender"), **Unified Recovery Group, LLC** ("URG"), **International Equipment Distributors, Inc.** ("INTED"), **Green & Sons II, LLC** ("G&S") and **IED, LLC** ("IED") (collectively, URG, INTED, G&S and IED are known as the "Borrowers", each individually being a "Borrower"), **J.S. Lawrence Green** and **Memory C. Green** (collectively,

"LGreen"), **Catahoula Trading Company, LLC** ("CTC") and **Jeff S. Green** and **Cecile G. Green** (collectively, "JGreen") (collectively, LGreen, JGreen, INTED and IED are known as the "Guarantors", each individually being a "Guarantor").

***

C.     The Guarantors, CTC and each of the Borrowers will receive a direct and material benefit from the making of the loans to Borrowers (URG, INTED, IED and G&S).   Lender is willing to make the Loans to URG, INTED, IED and G&S only if Borrowers, Guarantors and CTC each agree to be jointly, severally and solidarily liable for all of the Indebtedness of all Borrowers.

***

**2.     Joint, Several and Solidary Liability; Integration of Obligations.**

(a)     Notwithstanding anything to the contrary in this Agreement, any Mortgage or any Loan Documents, each Borrower, CTC and each Guarantor shall pay the Indebtedness of the Borrowers, as and when due. Accordingly, the Indebtedness of the Borrowers shall be the joint, several and solidary obligation of each Borrower, CTC and each Guarantor.

(b)     While each Loan represents a separate and independent obligation of the Borrower, each Borrower, CTC and each Guarantor acknowledges that, in requesting Lender to make the Loans, they intend that the Mortgaged Properties secure to Lender the payment and performance of all of the combined Obligations.

Accordingly, if any Borrower fails to pay fully, when due, any Indebtedness payable to Lender or under any Loan Document, then Lender may elect, in its discretion, to treat that amount as being due and owing by the Borrowers, CTC or Guarantors, on a joint, several and solidary basis; may enforce its rights and remedies against and collect such amounts from Borrowers, CTC or Guarantors on a joint, several and solidary basis; and may recover such amounts from the value of each of the Mortgaged Properties and other collateral set forth in the Loan Documents, on a pro rata basis or otherwise, as determined by lender in its sole and uncontrolled discretion.

***

**7.     Representations of each Borrower, CTC and each Guarantor.**   Each Borrower, CTC and each Guarantor represents to Lender that it:

5

(c) believes that it has received adequate consideration for the Combined Obligations assumed under this Agreement.

\*\*\*

**12.   Lender's Rights.**   Each Borrower, CTC and Guarantor agrees that Lender may, without demand and at any time and from time to time and without the consent of, or notice to, Borrower, CTC or Guarantor, without incurring responsibility to Borrower, CTC or Guarantor, and without impairing or releasing the Combined Obligations, upon or without any terms or conditions and in whole or in part:

\*\*\*

(b) take and hold security for the payment of the Indebtedness or Combined Obligations and sell, exchange, release, surrender, realize upon or otherwise deal with in any manner and in any order any property pledged or mortgaged to secure such Indebtedness or Combined Obligations;

\*\*\*

(f) apply any sums realized to any liability or liabilities of any other Borrower, CTC or Guarantor to Lender regardless of what liability or liabilities of Borrower, CTC or Guarantor remain unpaid to Lender

\*\*\*

**13.   Waiver of Presentment, Marshalling, Certain Suretyship Defenses, etc.**

\*\*\*

(b) Notwithstanding the existence of any other security interests in any Mortgaged Property held by Lender or by any other party, Lender shall have the right to determine in its sole and uncontrolled discretion the order in which any or all of the Mortgaged Properties or portions of any of the Mortgaged Properties shall be subjected to the remedies provided in this Agreement and the Loan Documents or applicable law.  Lender shall have the right to determine in its sole and uncontrolled discretion the order in which any or all portions of the Combined Obligations are satisfied from the proceeds realized upon the exercise of such remedies.

\*\*\*

**23.   Entire Agreement.**  This Agreement, together with the Note, Mortgage and Loan Documents, contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Agreement.

\*\*\*

**28.   No Party Deemed Drafter.**  No party shall be deemed the drafter of this Agreement, and this Agreement shall not be construed against either party as the drafter of the Agreement.

Doc. 47-4, at 2–10.

## II.

The Defendants, in their opposition, request an additional ninety days to conduct limited discovery.  Subsequent to the filing of the instant motion, the Defendants filed a motion to extend discovery deadline (Doc. 54), which was denied (Doc. 55).  For the same reasons articulated in the ruling denying the motion to extend discovery deadline, the Defendants' request is denied.

## III.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact."  Fed. Rule Civ. P. 56(a).  The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute."  Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden.  *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996).  Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary

judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991).  If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party.  *Celotex*, 477 U.S. at 322.  "[A] district court may properly grant summary judgment when a contract is unambiguous . . . ." *S. Natural Gas Co. v. Pursue Energy*, 781 F.2d 1079, 1081 (5th Cir. 1986).

IV.

SEPH argues summary judgment is appropriate since no genuine issues of material fact exist as to the following.  The Borrowers are in default under the Notes as evidenced by the Affidavit of Brett Baumeister ("the Affidavit"), SEPH Vice President, the terms of the Notes, and the admissions of the Borrowers. SEPH is the successor in interest of Vision Bank by virtue of the merger of these two entities in February of 2012. SEPH is also the holder of the Notes, which the Borrowers admit have not been paid in full.  Therefore, SEPH is entitled to judgment for the remaining balance on the Notes and all the associated security interests attached thereto.  In addition, the Affidavit and the terms of the Guaranties confirm that the Guarantors are solidarily liable for all unpaid amounts due under the Notes.  In their answer, the Borrowers have admitted that they signed and executed the Notes and that they executed the Guaranties.  It is undisputed that the Borrowers signed the aforementioned Notes, that the Notes are matured and have not been paid in full, and that the Borrowers and Guarantors executed multiple guaranty agreements, security agreements, and mortgages in favor of SEPH as security for the Notes.

SEPH requests that the Court recognize and maintain: (1) SEPH's right to enforce and collect the Notes and rendering judgment against the Borrowers on a joint and several and solidary basis in the principal amount of $23,626,922.31. Further, SEPH requests $2,784,717.10 in interest is due as of November 5, 2012, together with interest accruing at the specified rate of various loans from such day until paid, late charges, all court costs incurred in this proceeding, plus reasonable attorneys' fees; (2) the Security Interests granted by the Security Documents as security for all obligations of the Defendants hereunder; (3) the rights of SEPH to enforce the Guaranties as security for all remaining obligations of the Borrowers hereunder; (4) the rights of SEPH under the Catahoula Trading Mortgage, J.S. Lawrence Green Mortgage, and the Jeff Green Mortgage as security for all obligations of the Borrowers hereunder; (5) that the Security Interests granted by International Equipment Distributors, Inc. include accounts receivable owed by Livingston Parish as addressed in the Livingston Suit as security for all obligations of the Borrowers hereunder; (6) the rights of SEPH under the Equity Pledge as security for all obligations of the Defendants hereunder; (7) the rights of SEPH under the Insurance Policies as Collateral for all obligations of the Defendants hereunder; (8) that all costs, expenses, charges and reasonable attorneys' fees incurred in connection with these proceedings be awarded to SEPH.

The Defendants do not dispute the majority of SEPH's arguments.  They argue Green and Sons is not a guarantor for any indebtedness owed to SEPH, other than its own.  They also argue CTC entered into the CD Agreement only to provide additional collateral in the form of a Multiple Indebtedness Mortgage on a property it owns near Houma, Louisiana, and that CTC is not a guarantor for any of the indebtedness owed to

SEPH.  The Defendants argue CTC's liability, if any, is limited to the in rem value of the Houma property.

The Defendants further argue that the CD Agreement is vague, ambiguous, and sometimes contradictory.  They argue SEPH has not provided a consistent statement of which Defendants are "Borrowers" or "Guarantors" as referenced in the CD agreement, nor has it stated exactly which documents evidence the guaranties and exact nature and extent of the guaranties by any guarantors.  The Defendants argue the ambiguities and uncertainties within the CD Agreement call for the Court to look to parole evidence to determine the common intent of the parties to the CD Agreement.  The Defendants finally argue the CD Agreement and all documents pertaining to the closing that took place between SEPH and the Defendants were drafted solely by SEPH, and at no time did any attorney for any of the Defendants participate in the drafting of the CD Agreement or any of the documents executed on October 18, 2011, so the doubtful and ambiguous provisions should be construed against SEPH.

"Interpretation of a contract is the determination of the common intent of the parties."  La. Civ. Code art. 2045.  "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  La. Civ. Code art. 2046.  The words of the CD Agreement are clear and explicit as to which Defendants are "Borrowers" and which Defendants are "Guarantors."  The CD Agreement explicitly states that "collectively, URG, INTED, G&S and IED are known as the 'Borrowers', each individually being a 'Borrower.'"  INTED is defined in the same paragraph as International Equipment Distributors, Inc.  The CD Agreement explicitly states that "collectively, LGreen, JGreen, INTED and IED are

known as the 'Guarantors', each individually being a 'Guarantor.'"  "LGreen" is defined in the same paragraph as J.S. Lawrence Green and Memory C. Green.  "JGreen" is defined in the same paragraph as Jeff S. Green and Cecile G. Green.

The words of the CD Agreement are clear and explicit that Green and Sons' liability is joint, several, and solidary.  Green and Sons is a "Borrower" as defined by the CD Agreement.  The CD Agreement provides: "[l]ender is willing to make the Loans to URG, INTED, IED and G&S only if Borrowers, Guarantors, and CTC each agree to be jointly, severally and solidarily liable for all of the Indebtedness of all Borrowers"; "the Indebtedness of the Borrowers shall be the joint, several and solidary obligation of each Borrower, CTC and each Guarantor"; "each Borrower, CTC and each Guarantor acknowledges that, in requesting Lender to make the Loans, they intend that the Mortgaged Properties secure to Lender the payment and performance of all of the combined Obligations"; and "if any Borrower fails to pay fully, when due, any Indebtedness payable to Lender or under any Loan Document, then Lender may elect, in its discretion, to treat that amount as being due and owing by the Borrowers, CTC or Guarantors, on a joint, several and solidary basis; may enforce its rights and remedies against and collect such amounts from Borrowers, CTC or Guarantors on a joint, several and solidary basis; and may recover such amounts from the value of each of the Mortgaged Properties and other collateral set forth in the Loan Documents, on a pro rata basis or otherwise, as determined by lender in its sole and uncontrolled discretion." These words clearly and explicitly provide that Green and Sons, as a Borrower, is jointly, severally, and solidarily liable to SEPH for the entire indebtedness of the Defendants under the six notes.

11

The aforementioned words in the CD Agreement also clearly and explicitly provide that Catahoula Trading Company, abbreviated in the CD Agreement as "CTC," is jointly, severally, and solidarily liable to SEPH for the entire indebtedness of the Defendants under the six notes.

Despite the fact that SEPH presents twenty-seven documents as evidence of the guaranties without specifically pointing to certain language in the documents, the nature and extent of the guaranties by guarantor is clear. The words of the CD Agreement clearly and explicitly provide that J.S. Lawrence Green and Memory C. Green, Jeff S. Green and Cecile G. Green, International Equipment (abbreviated in the CD Agreement as "INTED"), and IED are known as the "Guarantors", each individually being a "Guarantor." The language referenced above to determine Green and Sons and CTC are jointly, severally, and solidarily liable to SEPH for the entire indebtedness of the Defendants under the six notes similarly provides, clearly and explicitly, that the Guarantors are jointly, severally, and solidarily liable to SEPH for the entire indebtedness of the Defendants under the six notes.

The words of the CD Agreement are clear and explicit and the decisions reached above are not absurd consequences. Therefore, the Court cannot look to parole evidence, and the absence of ambiguities, uncertainty, vagueness, and doubt in the portions of the CD Agreement the Court is pointed to leave no provisions for the Court to construe against the drafter.[1]

---

[1] The Court therefore does not reach SEPH's argument that the CD Agreement provides for no party to be deemed drafter.

V.

Accordingly, the Plaintiff's Motion for Summary Judgment (Doc. 46) is **GRANTED**.

**IT IS HEREBY ORDERED** that United Recovery Group, LLC, IED, and International Equipment Distributors, Inc. are liable to SE Property Holdings, LLC in the principal amount of $23,626,922.31 and in the interest amount of $2,784,717.10, with interest accruing at the specified rate of the loans until paid, late charges, and reasonable attorneys' fees. All Defendants are jointly, severally, and solidarily liable for these monetary amounts, and SE Property Holdings, LLC may enforce its rights under the security agreements, guaranty agreements, mortgages, the Pledge and Security Agreement, and life insurance policies as provided by those documents.

Signed in Baton Rouge, Louisiana, on April 2, 2013.

_____

**JAMES J. BRADY, DISTRICT JUDGE**